# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MARCUS E. LOLAR,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-CV-0397-TCK-JFJ** |
| | ) | |
| **SCOTT CROW,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

Petitioner Marcus Lolar, a state inmate appearing pro se,[2] commenced this action on July 30, 2018, by filing a 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. 1).[3] Before the Court is Respondent's motion to dismiss the habeas petition as time-barred under 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations (Dkt. 11). Respondent filed a brief in support of the motion (Dkt. 12), and Petitioner filed a response (Dkt. 15). For

---

[1] The named respondent, Joe M. Allbaugh, recently resigned from his position as the Director of the Oklahoma Department of Corrections (ODOC). The Court therefore substitutes the ODOC's Interim Director, Scott Crow, as party respondent. *See* Fed. R. Civ. P. 25(d). The Clerk of Court shall note this substitution on the record.

[2] Because Petitioner appears pro se, the Court liberally construes his pleadings in this court as well as those pleadings he filed in state court as a pro se litigant. *Smith v. Allbaugh*, 921 F.3d 1261, 1268 (10th Cir. 2019); *Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009).

[3] The Clerk of Court received the habeas petition on August 1, 2018. Dkt. 1, at 1. However, the Court agrees with Respondent that the petition should be deemed filed on July 30, 2018, through application of the prison mailbox rule. Dkt. 12, at 8, n.7; *see Houston v. Lack*, 487 U.S. 266, 276 (1988) (noting pleading is filed when pro se prisoner "deliver[s] it to the prison authorities for forwarding to the court clerk").

the reasons that follow, the Court grants Respondent's motion and dismisses the petition for writ of habeas corpus as time-barred.

## I.    Background[4]

### A.    Jury trial and direct appeal

In January 2014, following a two-day trial in the District Court of Osage County, Case No. CF-2012-360, a jury convicted Petitioner of first-degree robbery, in violation of OKLA. STAT. tit. 21, § 798 (2011), and second-degree burglary, in violation of OKLA. STAT. tit. 21, § 1435 (2011). Dkt. 1, at 1-2; Dkt. 12-27, at 12-14.[5] Evidence presented at trial established that on September 20, 2012, Petitioner broke into the unoccupied home of Earnest Shannon McGuire, in Pawhuska, Oklahoma, possibly through a back window. Dkt. 22-1 (Trial Transcript), *Lolar v. Allbaugh*, N.D. Okla. Case No. 16-CV-692-GKF-JFJ, at 96-107, 128-35, 142-46, 200-207, 220-28. When McGuire returned home, Petitioner

---

[4] Respondent provided the Court with a copy of the docket sheet from Osage County District Court (OCDC) Case No. CF-2012-360 (Dkt. 12-27) as well as several relevant state court filings. To the extent necessary to resolve Respondent's motion, the Court takes judicial notice of (1) state court filings in Case No. CF-2012-360, not provided by either party in this case, that are available to the public through the Oklahoma State Courts Network (www.oscn.net); (2) the state court record previously provided by Respondent in *Lolar v. Allbaugh*, N.D. Okla. Case No. 16-CV-692-GKF-JFJ; and (3) the habeas petition, response and reply filed by Petitioner and Respondent in *Lolar v. Allbaugh*, N.D. Okla. Case No. 16-CV-0692-GKF-JFJ. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (stating federal courts may take judicial notice of public records from other courts "concerning matters that bear directly upon the disposition of the case at hand"); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (noting federal courts may "take judicial notice, whether requested or not, . . . of its own records and files and facts which are part of its public records" including "the court's own records of prior litigation related to the case before it").

[5] For consistency, the Court's record citations refer to the CM/ECF header page number in the upper right-hand corner of each document.

physically assaulted McGuire, stabbed him in the neck with a steak knife, causing non-fatal wounds, demanded money, and took approximately $300 from him.  *Id.*  The jury affixed punishment at 16 years' imprisonment for the robbery and two years' imprisonment for the burglary.  Dkt. 12-27, at 14.  In March 2014, the trial court sentenced Petitioner accordingly and ordered the sentences to be served concurrently.  *Id.* at 15.

Represented by counsel, Petitioner filed a direct appeal, claiming (1) prosecutorial misconduct deprived him of a fair trial and (2) trial counsel's inadequate performance deprived him of his right to the effective assistance of counsel.  Dkt. 12-1, *Lolar v. State*, No. F-2014-257 (Okla. Crim. App. 2015) (unpublished), at 1.  In an unpublished summary opinion filed April 21, 2015, the Oklahoma Court of Criminal Appeals (OCCA) affirmed Petitioner's convictions and sentences.  *Id.* at 1-3.

### B.    State post-conviction proceedings

Proceeding pro se, Petitioner pursued various post-conviction remedies.  First, on May 15, 2015, Petitioner filed a motion for judicial review, seeking modification of his sentence.  Dkt. 12-27, at 19.  The state district court denied the motion four days later.  *Id.*

One month later, on June 22, 2015, Petitioner filed an application for post-conviction relief (hereafter, PCRA I), claiming he was deprived of "due process" and his rights under Oklahoma's Postconviction DNA Act, OKLA. STAT. tit. 22, §§ 1373.2, 1373.4. Dkt. 12-2, at 2.[6]  Citing *Brady v. Maryland*, 373 U.S. 83 (1963), he alleged exculpatory

---

[6] Unless otherwise noted, in quoting from Petitioner's pro se pleadings and other portions of the state court record, the Court adheres to ordinary rules regarding capitalization and the use of italics, underlining, and boldface type.

evidence was withheld because the State, his trial counsel, and his appellate counsel failed to request DNA testing on fingerprints from a window of the victim's house and blood and fingerprints from the knife used to stab the victim. *Id.* at 2, 16. Petitioner requested DNA testing of this evidence and attached a copy of a legislative draft of Oklahoma's Postconviction DNA Act. *Id.* at 4-16.

On September 24, 2015, Petitioner filed two motions seeking an evidentiary hearing, along with a notarized affidavit. Dkt. 12-3; Dkt. 12-27, at 20. In the affidavit, Petitioner reasserted that neither the State nor his lawyers requested DNA testing of crime scene evidence, in violation of his 14th Amendment due process rights and *Brady*. Dkt. 12-3, at 2. Petitioner again requested DNA testing under the Postconviction DNA Act. *Id.*

On March 14, 2016, Petitioner filed a "motion requesting forensic DNA testing" and attached a notarized affidavit. Dkt. 12-4. Citing the Postconviction DNA Act, Petitioner once again requested testing of fingerprints from the victim's window and fingerprints and blood from the knife. *Id.* at 1.

Seven days later, on March 21, 2016, the state district court entered an order noting that Petitioner filed PCRA I and other motions and directing the State to "file a response within 20 days to all pending motions." Dkt. 12-9, at 20. The court stated that if the State failed to file a response, the court would "summarily grant the relief requested" in the motions. *Id.* The State did not file a response within 20 days. Dkt. 12-27, at 23.

On April 22, 2016, Petitioner filed a second application for post-conviction relief (hereafter, PCRA II), a brief in support, and a motion for evidentiary hearing. Dkt. 12-5, at 1, 7-16. Petitioner identified two propositions of error in PCRA II. *Id.* at 2, 5. In

proposition one, Petitioner alleged a due-process violation and cited *Brady*, the Fourth Amendment, and the Fourteenth Amendment. *Id.* at 2. In his supporting brief, he argued that his "due process" claim arose from the State's failures (1) to "process" exculpatory DNA evidence and (2) to prove every element of the crimes charged. *Id.* at 10. As to the second failure, Petitioner cited *Sullivan v. Louisiana*, 508 U.S. 275 (year), and alleged the State "didn't prove the DNA fingerprints on the window." *Id.* In proposition two, Petitioner cited *Strickland v. Washington*, 466 U.S. 668 (1984), and alleged a violation of his Sixth Amendment right to the effective assistance of appellate counsel. *Id.* at 5, 10. In his supporting brief, Petitioner identified four issues appellate counsel omitted from his direct appeal brief: (1) that the evidence is insufficient to support his convictions, (2) that trial counsel failed to impeach a witness based on bias and inconsistent statements, (3) that Petitioner's procedural due process rights were violated because he was "never formally arraigned or given a preliminary hearing" on the amended information, and (4) that an evidentiary hearing should have been held to challenge the truthfulness of the probable cause affidavit. *Id.* at 10-14.[7]

Petitioner filed a "motion to execute court order" on May 2, 2016, asking the state

---

[7] Within his arguments regarding the third and fourth omitted issues, Petitioner also seemed to allege (1) that his arrest warrant was invalid for other reasons, Dkt. 12-5, at 13-14, (2) that appellate counsel was ineffective for failing to adequately argue prosecutorial misconduct and ineffective assistance of trial counsel, *id.* at 14-16, and (3) that he is "actually innocent," *id.* at 16. It is not entirely clear whether Petitioner intended to assert these allegations as separate claims for post-conviction relief or to support his ineffective-assistance-of-appellate-counsel claim. In his motion for an evidentiary hearing, filed April 22, 2016, Petitioner sought a hearing "to challenge the 'truthfulness' of the affidavit for probable cause." *Id.* at 7.

district court to enforce its March 21, 2016 order that directed the State to respond to "all pending motions." Dkt. 12-9, at 21. In that motion, Petitioner asserted that the State had not yet responded to PCRA I or any pending motions. *Id.*

The next day, May 3, 2016, the State filed a four-page "response to [Petitioner's] motion requesting forensic DNA testing." Dkt. 12-6, at 1.[8] The State argued Petitioner's March 14, 2016 motion requesting forensic DNA testing was facially defective because the attached affidavit was not sworn and Petitioner failed to assert his innocence in either the motion or the affidavit. *Id.* at 2. The State further argued Petitioner's March 14, 2016 motion was either his second or third request for DNA testing under the Postconviction DNA Act and was procedurally barred because (1) Petitioner filed a motion for judicial review on May 19, 2015, but "failed to request the DNA testing which he now seeks," and (2) previously requested DNA testing through his September 24, 2015 motion for evidentiary hearing—a motion the State acknowledged had not been considered by the state district court. *Id.* at 2-3. To support its procedural bar argument, the State cited OKLA. STAT. tit. 22, § 1086, a provision of Oklahoma's Postconviction Procedure Act that requires all grounds for relief to be raised in in an original, supplemental or amended application for post-conviction relief. *Id.* at 3. Ultimately, the State urged the court to deny Petitioner's March 14, 2016 motion requesting forensic DNA testing. *Id.* at 3-4.

In a one-page "order denying motions and petition for post conviction relief," dated May 3, 2016, and filed May 5, 2016, the state district court found that it "should adopt the

---

[8] The State asserted that the response was filed "within sixty (60) days of the filing of Defendant's Motion as required by 22 O.S. 1373.2(D)." Dkt. 12-6, at 1-2.

reasoning of the State in its Response filed May 3, 2016 and deny the motions filed by the [Petitioner]." Dkt. 12-7.

Petitioner timely perfected a post-conviction appeal from the May 5, 2016 order. Dkt. 12-8; Dkt. 12-27, at 24. In his appeal brief, Petitioner argued the state district court erred in concluding that his requests for relief under the Postconviction DNA Act, as asserted in PCRA I and his September 24, 2015 motion for an evidentiary hearing, were procedurally barred. Dkt. 12-9, at 1-4. He alleged that, contrary to the State's position, he submitted notarized affidavits in support of his requests and he had sufficiently proclaimed his innocence. *Id.* at 3-4. He also asserted that the State failed to respond to the state district court's March 21, 2016 order directing a response and failed to file a response to PCRA I within 30 days as required by OKLA. STAT. tit. 22, § 1083(A). *Id.* at 3.

On June 27, 2016, while his post-conviction appeal was pending, Petitioner filed a "motion for disposition and favorable judgement" in state district court. Dkt. 12-27, at 25. Petitioner advised the court that the State had not filed an answer or response to PCRA II and had not requested additional time to do so. *See* Doc. #CC16062800000070, http://www.oscn.net/dockets/GetCaseInformation.aspx?db=osage&number=CF-2012-00360&cmid=6824, last visited August 4, 2019. Petitioner asked the court to deem PCRA II "confessed" by the State and grant Petitioner the relief requested therein. *Id.*[9]

---

[9] On August 9, 2016, Petitioner filed a petition for writ of mandamus in state district court, seeking a ruling on his June 27, 2016 motion. Dkt. 12-27, at 25. Three days later, Petitioner filed a mandamus petition in the OCCA seeking the same relief. Doc. #1033914580, http://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=MA-2016-728&cmid=119704, last visited August 4, 2019.

By order filed July 12, 2016, in Petitioner's post-conviction appeal, Case No. PC-2016-0457, the OCCA remanded the case to the state district court "for entry of an order setting forth findings of fact and conclusions of law addressing Petitioner's application for post-conviction relief requesting DNA testing pursuant to the Post-Conviction DNA Act, 22 O.S. Supp. 2013, §§ 1373-1373.7." Dkt. 12-10, at 1-2. The OCCA found no support for the State's position, adopted by the state district court, that Petitioner's request for DNA testing was procedurally barred because the record did "not include any previous District Court order addressing Petitioner's request for DNA testing." *Id.* at 2.

Pursuant to the OCCA's remand order, the state district court entered an order on August 10, 2016, denying Petitioner's requests for post-conviction relief. Dkt. 12-11. The court acknowledged that Petitioner filed two separate applications for post-conviction relief, and described the propositions of error Petitioner asserted in PCRA I and PCRA II. *Id.* at 3-5. The court noted that both applications for post-conviction relief referenced "due process," *Brady*, and ineffective assistance of appellate counsel, but the court stated Petitioner's "primary complaint is that the State did not provide him with exculpatory evidence." *Id.* at 3-5, 9-10. Regarding Petitioner's requests for DNA testing, the court found, based on its review of the trial record, that "there were no prints on the bloody steak knife" and that the window had not been dusted for fingerprints. *Id.* at 5-9. The court reasoned that ordering the State to comply with Petitioner's request for DNA testing would be "an exercise in futility" because "no further evidence exists." *Id.* at 10. The court also readopted the State's arguments that Petitioner's requests for relief under the Postconviction DNA Act were procedurally barred and not supported by an assertion of

innocence or sworn affidavit. *Id.* at 7, 10. The court further reasoned that Petitioner "had ample opportunities" to request DNA testing "prior to trial, during trial, on appeal, and on motion to review which all came after the effective date of *Brady*, *The Oklahoma Criminal Discovery Code* and as a common law discovery tool at preliminary hearing." *Id.* at 10. Finally, the court concluded, based on its review of the trial record, that the evidence "overwhelmingly" supported the jury's guilty verdicts. *Id.* The court thus denied Petitioner's applications for post-conviction relief, his motions for an evidentiary hearing, and his "motion for disposition and favorable judgement." *Id.* at 11.

On August 19, 2016, Petitioner filed a "motion in response in objection" to the state district court's August 10, 2016 order. Dkt. 12-12. In that motion, Petitioner raised three primary objections: (1) that the State's response was limited to his March 14, 2016 motion requesting forensic DNA testing and did not address PCRA I, (2) that he had, in fact, asserted his innocence in a sworn affidavit, and (3) that the state district court erred in "attempting to lump together" Petitioner's separate applications for post-conviction relief under the Postconviction DNA Act (PCRA I) and the Postconviction Procedure Act (PCRA II), particularly when the State never filed a response to PCRA II. *Id.* at 1-2.

In an unpublished order filed August 31, 2016, in Case Nos. PC-2016-0457 and MA-2016-0728, the OCCA affirmed the state district court's denial of Petitioner's request for post-conviction DNA testing and denied his petition for writ of mandamus. Dkt. 12-13, at 1-4. The state district court received the mandate from the OCCA in Petitioner's post-conviction appeal on September 2, 2016. Dkt. 12-27, at 26.

Between September 29, 2016, and April 7, 2017, Petitioner filed five motions and a

petition for writ of mandamus in state district court.[10]  The first four motions and the

mandamus petition sought relief relating to PCRA I and Petitioner's requests for DNA

testing, whereas Petitioner's April 7, 2017 motion to dismiss reasserted that the State failed

to respond to PCRA II.  *See* Dkts. 12-17 through 12-22.  By order filed July 10, 2017, the

state district court denied all five motions and the mandamus petition.  Dkt. 12-23.  With

respect to the motion to dismiss, the court stated (1) that it had denied both PCRA I and

PCRA II in its May 5, 2016 order and (2) that Petitioner had appealed the denial of both

PCRA I and PCRA II through his post-conviction appeal.  *Id.* at 1-2, ¶¶ 5-6, 10 and 12.

Petitioner did not seek further review of the July 10, 2017 order.  Dkt. 12-27, at 28.[11]

---

[10] Petitioner filed a "motion to request rehearing and objection to Court of Criminal Appeals denial to DNA testing," on September 29, 2016 (Dkt. 12-17); a "motion for status conference or hearing; of judicial notice requesting a response to petitioner's letter of inquiry concerning case no:  2012-360," on October 17, 2016 (Dkt. 12-18); a "motion for fast and speedy trial," on November 16, 2016 (Dkt. 12-19); a petition for writ of mandamus, on March 15, 2017 (Dkt. 12-20); a "motion to reopen the first petition for postconviction relief based upon extraordinary cause; newly discovered evidence. House Bill 1045. 22 O.S. 211 Sec. 1080(B)(3)," on March 23, 2017 (Dkt. 12-21); and a motion to dismiss, on April 7, 2017 (Dkt. 12-22).

[11] On May 2, 2017, before the state district court denied his pending motions and mandamus petition, Petitioner did file a "motion to clarify/correct the record" in the OCCA, Case No. MA-2017-449.  Dkt. 12-25.  In that motion, Petitioner alleged the state district court violated his "14th Amendment Rights, Equal Protection of the Law, and Collateral Estoppel" by permitting the State to file a response to PCRA I on May 3, 2016, contrary to the state district court's March 21, 2016 order that provided a 20-day response time.  *Id.* at 1.  Petitioner further alleged that State never filed a response to PCRA II.  *Id.* at 2. Petitioner asserted that because the State never answered PCRA II, the OCCA's mandate in PC-2016-457 was "invalid."  *Id.* at 2.  Petitioner asked the OCCA to order the state district court to either grant his April 7, 2017 motion to dismiss or release him from custody.  *Id.*  The OCCA issued an order on June 21, 2017, construing Petitioner's motion as a request for "rehearing of this Court's order in appeal Nos. PC-2016-457 and MA-2016-728," held that a petition for rehearing was "not allowed," and dismissed the motion. Dkt. 12-26, at 1-2.

Between January 16, 2018, and March 12, 2018, Petitioner filed five motions seeking either to supplement or amend PCRA II or to obtain a ruling on PCRA II. Dkt. 12-27, at 28-29. On March 12, 2018, Petitioner also initiated a third mandamus action in the OCCA by filing a "motion to compel Osage County District Court to answer Petitioner's post-conviction application stamped file dated 4/22/16." Doc. #1039528923, http://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=MA-2018-257&cmid=123546, last visited August 4, 2019. On March 28, 2018, the OCCA declined jurisdiction and dismissed the action, citing Petitioner's failure to provide adequate notice to the proper party. *See id.* Doc. #1039531203.

Petitioner commenced a fourth mandamus action in the OCCA, Case No. MA-2018-392, on April 18, 2018, by filing a "motion to compel Osage County District Court to Answer Petitioner's Post-Conviction Application Stamped File dated 4/22/16." Dkt. 12-14. In the motion, Petitioner alleged PCRA II was still pending in state district court and documented his previous efforts to seek a ruling on PCRA II by filing various motions in state district court and seeking mandamus relief from the OCCA. *Id.* at 2-5.[12] By order filed May 15, 2018, the OCCA directed the state district court (1) to determine whether Petitioner filed an application for post-conviction relief on April 22, 2016, (2) if so, to advise the OCCA whether the court had already disposed of that application, and (3) to

---

[12] In support of his allegation that PCRA II was still pending, Petitioner cited Respondent's response to his first federal habeas petition wherein Respondent (1) indicated that it appeared from the state court record that PCRA II was still pending and (2) asserted that the claims raised in PCRA II were thus unexhausted. Dkt. 12-14, at 3-5; *see also* Dkt. 21, *Lolar v. Allbaugh*, N.D. Okla. Case No. 16-CV-692-GKF-JFJ, at 17 n.11, 18 n.13,

rule on the application within 30 days if the application was pending. Dkt. 12-15, at 1.

The state district court filed a response to the OCCA's order on June 4, 2018. *See* Dkt. 12-16 (copy of response filed in state district court May 29, 2018). The court attached to its response (1) a copy of the docket sheet in Case No. CF-2012-360 and (2) its July 10, 2017 order. *Id.* at 4-15. The court described its July 10, 2017 order as "the dispositive order as to all pending motions, petitions and pleadings concerning [Petitioner]," and stated that "[a]ll other matters were heard by the [OCCA] in MA-17-449." *Id.* at 1. The court further stated,

> The appeal time or motion for new trial time of the [state district court's] decision commenced **July 10, 2017**. Petitioner Lolar filed further pleadings as indicated on the docket commencing January 16, 2018 with a (a) Motion to Supplement the Record, (b) January 24, 2018 with a Motion for Status Conference, (c) January 19, 2018 Motion to Answer, (d) March 12, 2018 with a Motion to Supplement the Petitioner's Post-Conviction Brief filed **April 22, 2016**, Motion to Amend Petitioner's Motion for Evidentiary hearing in CF-12-360 Pertaining to His Post-Conviction Stamped Filed **April 22, 2016**. All of these pleadings are not properly before the undersigned as they are out of time for consideration and a nullity as the Court has previously ruled upon them **July 10, 2017** some 6 months prior with notice to Petitioner.

Dkt. 12-16, at 1, ¶ 3 (boldface type and underlining in original). In paragraph five of the response, the court stated,

> Petitioner was tried and convicted and later sentenced on March 14, 2014 before the undersigned. He appealed and lost by mandate affirmed filed in the District Court April 27, 2015 in F-14-257. He filed his Petition for Post-Conviction and was denied on May 5, 2016. He appealed and it was remanded and the undersigned entered an order on August 10, 2016. This order was affirmed by mandated issued in PC-2016-457. Defendant filed a motion to reopen on March 23, 2017 and the undersigned denied all motions on July 10, 2017 as stated hereinabove. There is nothing that the undersigned can rule upon and Petitioner has no further remedy to re-litigate the same issues.

Dkt. 12-16, at 2.

Finally, the court stated that Petitioner "presented two Petitions for Post-Conviction relief which have been denied," that he "currently has nothing before the Undersigned," and that Petitioner's more recent motions were "invalid attempts to revive his earlier petitions which were presented for appeal to the [OCCA]." *Id.* at 2, ¶ 7. By order filed June 15, 2018, in Case No. MA-2018-392, the OCCA dismissed Petitioner's request for a writ of mandamus as moot, stating "the District Court fully adjudicated Petitioner's complaints regarding the pending matters in this case." Dkt. 12-24, at 2.

### C.    Federal habeas proceedings

As previously noted, Petitioner has twice sought federal habeas relief in this court. On November 16, 2016, Petitioner filed a 28 U.S.C. § 2254 petition for writ of habeas corpus, seeking relief on one claim: "DNA testing." Dkt. 29, *Lolar v. Allbaugh*, N.D. Okla. Case No. 16-CV-0692-GKF-JFJ, at 1. In support of that claim, Petitioner alleged the State and his trial counsel "failed to test fingerprints on window Petitioner was accused of 'Breaking Into,'" and "failed to test DNA and fingerprints on knife Petitioner was accused of 'Stabbing victim in the neck' with." *Id.* at 1-2. Nearly one year after the matter was fully briefed, Petitioner filed two motions, on June 25, 2018, and July 25, 2018, requesting voluntarily dismissal of the habeas petition on the basis that his sole claim for relief "lack[ed] merits." *Id.* In addition, Petitioner vaguely asserted that he needed "to exhaust his state remedies in his post-conviction." *Id.* at 2. Based on the record then before the Court, and Respondent's response to the petition, the Court found that PCRA II appeared to be "pending in state district court as of July 19, 2017," and that Petitioner's stated need

to exhaust state remedies likely referred to exhaustion of the claims asserted in PCRA II. *Id.* at 3-4. The Court granted Petitioner's motions and dismissed the habeas petition without prejudice to refiling. *Id.* at 4. In doing so, the Court also noted that Petitioner had already filed a second § 2254 petition for writ of habeas corpus in the instant case. *Id.* at 4 n.1.

As previously stated, Petitioner filed the instant federal habeas petition on July 30, 2018. Dkt. 1, at 1, 15. Petitioner now seeks federal habeas relief on four grounds. First, he claims the state violated his right to due process, as interpreted in *Brady v. Maryland*, 373 U.S. 83 (1963), and *McCormick v. Parker*, 821 F.3d 1240 (10th Cir. 2016), by failing to "process exculpatory evidence"—namely, fingerprints on the victim's bedroom window and DNA and fingerprints on the knife used to stab the victim—evidence he alleges "would have proved [his] innocence." Dkt. 1, at 5. Second, he claims he was deprived of his right to effective assistance of appellate counsel, as interpreted in *Strickland v. Washington*, 466 U.S. 668 (1984), because appellate counsel failed to (1) assert a *Brady* claim based on the State's failure to "test exculpatory evidence," (2) assert an ineffective-assistance-of-trial-counsel claim based on trial counsel's failure to impeach a witness when her testimony was inconsistent with the probable cause affidavit, and (3) assert a claim that the Pawhuska

Police Department lacked jurisdiction to arrest Petitioner in another county.[13]  *Id.* at 7.

Third, he claims the State violated his right to due process, as interpreted in *Sullivan v. Louisiana*, 508 U.S. 275 (1993), by failing to prove every essential element of the crimes charged beyond a reasonable doubt.  *Id.* at 8.  Fourth, he claims the State violated his Fourth Amendment right to be free from an unreasonable seizure because William McDaniel, a Pawhuska police officer, arrested him in Ponca City without probable cause and without jurisdiction.  *Id.* at 10.

In response to the instant petition, Respondent filed a motion to dismiss the petition as time-barred under 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations (Dkt. 11), along with a brief in support (Dkt. 12).  Petitioner filed a timely response to the motion to dismiss (Dkt. 15).[14]

---

[13] Regarding the third omitted issue, Petitioner attached to his instant habeas petition a copy of an opinion and order filed December 29, 2017, in N.D. Okla. Case No. 17-CV-0135-JED-FHM.  Dkt. 1-2, at 8-11.  In that order, this court dismissed Petitioner's civil rights action against two Pawhuska police officers.  *Id.*  In his civil complaint, Petitioner alleged the officers lacked jurisdiction and probable cause to arrest him, but this court dismissed the action as time-barred by the two-year statute of limitations applicable to actions filed under 42 U.S.C. § 1983.  *Id.*

[14] Three months after the response deadline, Petitioner filed a motion for summary judgment (Dkt. 16).  Respondent filed a response (Dkt. 17), characterizing Petitioner's motion as a continuation of Petitioner's response to the motion to dismiss.  On July 25, 2019, Petitioner filed a motion for leave to withdraw his motion for summary judgment (Dkt. 21).  Though not entirely clear, it appears Petitioner now believes his response to the motion to dismiss adequately addresses Respondent's motion and that it was unnecessary to file the summary judgment motion.  Dkt. 21.  The Court agrees and thus grants Petitioner's motion to withdraw his summary judgment motion.  The motion for summary judgment (Dkt. 16) and the response to that motion (Dkt. 17) are ordered stricken from the record.

## II.    Discussion

### A.    Legal framework

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), state prisoners have one year from the latest of four dates to file a federal habeas petition:

> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Regardless of when the one-year limitation period commences, the AEDPA provides for statutory tolling of the limitation period for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2). This tolling provision applies when two conditions are met. First, the application for post-conviction relief or other collateral review must be "properly filed," i.e., it must be filed in compliance with applicable state law and procedural rules. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *Habteselassie v. Novak*, 209 F.3d 1208, 1210-11 (10th Cir. 2000). Second, the application for post-conviction relief or other collateral review must be filed before the petitioner's one-year limitation period expires. *Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006).

Because the AEDPA's statute of limitations is not jurisdictional, the one-year limitation period also may be tolled for equitable reasons. *Holland v. Florida*, 560 U.S. 631, 645 (2010). To obtain equitable tolling, a petitioner bears the burden to demonstrate "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing" of his federal habeas petition. *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (describing petitioner's burden to allege "specific facts" establishing diligence and extraordinary circumstances). While equitable tolling is available to permit review of untimely habeas claims, it is considered "a rare remedy to be applied in unusual circumstances." *Al-Yousif v. Trani*, 779 F.3d 1173, 1179 (10th Cir. 2015) (quoting *Yang*, 525 F.3d at 929).

Finally, the failure to comply with the AEDPA's statute of limitations may be excused in the rare case when a petitioner presents "a credible showing of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 386, 392 (2013). In *Perkins*, the Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to overcome the failure to comply with the AEDPA's statute of limitations and permit a federal habeas court to review the merits of an untimely habeas claim. 569 U.S. at 386. However, to present a credible claim of actual innocence a "petitioner [must] support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The petitioner must then "persuade[] the district court that, in light of the

new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Perkins*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329).

## B.    Analysis

Respondent contends that the habeas petition is untimely under 28 U.S.C. § 2244(d)(1)(A), even if the Court generously applies § 2244(d)(2)'s statutory tolling provision. Dkt. 12, at 6-9. Respondent further contends that Petitioner has neither demonstrated any circumstances warranting equitable tolling nor presented a credible claim of actual innocence that would excuse his untimely filing. *Id.* at 9-14.

Petitioner appears to urge this Court to deem the petition timely for two reasons. First, he seems to contend he is entitled to statutory tolling from the time he filed PCRA II, on April 22, 2016, through the present because neither the state district court nor the OCCA issued a "decision on the merits" of the claims he raised in PCRA II.[15] Dkt. 15, at 1-7; *see also* Dkt. 1, at 13-14 (suggesting state remedies relating to the claims he asserted in PCRA II are no longer available under 28 U.S.C. § 2254(b)(1)(B)(i), because neither the state district court nor the OCCA addressed the claims he raised in that application). Second, he maintains that he is actually innocent. Dkt. 1, at 14; Dkt. 15, at 8-9.

---

[15] Because it is not entirely clear whether Petitioner seeks both statutory tolling and equitable tolling based on the state courts' alleged inaction relating to PCRA II, the Court considers both types of tolling below.

**1. The petition is untimely under § 2244(d)(1)(A).**[16]

Under § 2244(d)(1)(A), a state-court judgment becomes final either (1) at the conclusion of direct review or (2) when the time for seeking direct review expires. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). The OCCA affirmed Petitioner's judgment and sentence on April 21, 2015, and Petitioner did not seek further direct review by filing a petition for writ of certiorari in the United States Supreme Court. Dkt. 1, at 3; Dkt. 12-1, at 1. Thus, as Respondent contends, Petitioner's judgment became final on July 20, 2015, when the 90-day period to seek further direct review expired. Dkt. 12, at 7; *see Gonzalez*, 565 U.S. at 150; Sup. Ct. R. 13.1 (providing 90-day period for filing petition for writ of certiorari); *Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001) (holding state court judgment is not final under § 2244(d)(1)(A) until 90-day period for seeking writ of certiorari from Supreme Court expires). Absent statutory tolling, Petitioner's one-year limitation period would have commenced the next day, July 21, 2015, and would have expired on July 21, 2016. *See Harris v. Dinwiddie*, 642 F.3d 902, 906 n.6 (10th Cir. 2011) (utilizing anniversary method for computing AEDPA's one-year limitation period and providing limitation period commences the day after conviction becomes final); Fed. R. Civ. P. 6(a)(1)(A) (providing that in computing period of time stated in days, the day of the event triggering the time period is excluded).

---

[16] Neither party suggests Petitioner's one-year limitation period commenced at a later date under other provisions of § 2244(d)(1). As a result, the Court considers only whether the petition is timely under § 2244(d)(1)(A).

## 2. Applying § 2244(d)(2) does not make the petition timely.

As previously stated, the one-year limitation period is tolled, by statute, for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).

In Respondent's view, Petitioner properly filed two applications for post-conviction relief—PCRA I, on June 22, 2015, and PCRA II, on April 22, 2016—and is therefore entitled to statutory tolling from July 21, 2015, the first day of his one-year limitation period, through August 31, 2016, the day the OCCA "issued its final ruling in Petitioner's [post-conviction] appeal." Dkt. 12, at 7.[17] Respondent contends Petitioner's one-year limitation period thus effectively commenced on September 1, 2016. *Id.* Respondent further contends that neither any of the motions Petitioner filed after September 1, 2016, nor his first federal habeas petition had any tolling effect. *Id.* at 8-9. As a result, Respondent argues, Petitioner's one-year limitation period expired on September 1, 2017, well before Petitioner filed his habeas petition on July 30, 2018. *Id.* at 7-9.

---

[17] Respondent notes that Petitioner describes all but PCRA II, filed April 22, 2016, "as falling within" the Postconviction DNA Act. Dkt. 12, at 7 n.6. Respondent further notes that a motion for DNA testing which does not call for a "judicial reexamination of the judgment imposing [the] Applicant's sentence" is not a tolling motion under § 2244(d)(2). *Id.*; *see Woodward v. Cline*, 693 F.3d 1289, 1293 (10th Cir. 2012). Nonetheless, citing Petitioner's references to *Brady* and "due process" in PCRA I and "in an abundance of caution," Respondent construes PCRA I and Petitioner's related motions as tolling motions. Dkt. 12, at 7 n.6. In the alternative, Respondent contends that if only PCRA II constitutes a tolling motion, Petitioner would be entitled to statutory tolling only from April 22, 2016, through August 31, 2016, and his one-year limitation period would have expired on November 27, 2016. *Id.* As further discussed below, under the particular circumstances of this case the Court adopts Respondent's cautionary view and treats PCRA I as a tolling motion.

For three reasons, the Court agrees with Respondent.  First, as Respondent contends, while Petitioner filed several motions in state district court between September 29, 2016, and April 7, 2017, and between January 16, 2018, and March 12, 2018, "none of the motions were either properly filed or timely, as the district court explained to Petitioner in its July 10, 2017, and May 29, 2018, orders."  Dkt. 12, at 8.  Second, Respondent is correct that Petitioner's first federal habeas petition, filed November 16, 2016, had no tolling effect under § 2244(d)(2).  Dkt. 12, at 9 n.8; *see Duncan v. Walker*, 533 U.S. 167, 181 (2001) (explaining that plain language of § 2244(d)(2) does not contemplate tolling for the time during which a petition for writ of habeas corpus is pending in federal court).  Third, to the extent Petitioner's arguments could be construed as seeking statutory tolling because, in his view, his PCRA II claims have never been decided "on the merits," the record does not

support statutory tolling.[18]  Critically, the state district court acknowledged in its August

10, 2016 order that Petitioner filed PCRA I and PCRA II, and the court stated that it was

denying relief on both "petitions for postconviction relief." Dkt. 12-11, at 3-5.  In addition,

in that same order, the state district court denied Petitioner's "motion for disposition and

favorable judgement," filed June 27, 2016—a motion that sought a ruling on PCRA II

based on the State's failure to file a response to PCRA II. *Id.* at 11.  Finally, in Petitioner's

"objection and response," filed August 19, 2016, Petitioner apparently recognized, through

his argument that the state district court improperly "lump[ed] together" the two post-

conviction applications, that the state district court had in fact denied both applications in

its August 10, 2016 order.  Dkt. 12-12.  Even assuming the state district court improperly

considered PCRA I and PCRA II as essentially seeking the same relief—namely, DNA

---

[18] Petitioner's view is not entirely unreasonable.  The state court record reflects that the State never filed a response to PCRA II.  Rather, as Petitioner argued in state court, the State filed a response addressing only Petitioner's March 14, 2016 motion requesting forensic DNA testing.  *See* Dkt. 12-6.  The state district court then adopted the reasoning from the State's limited response in the court's May 5, 2016 order—an order that appeared to deny "all pending motions" and only one petition for post-conviction relief, presumably PCRA I given the State's focus on Petitioner's request for DNA testing.  Dkt. 12-7.  Arguably, both Petitioner and the OCCA appeared to read the May 5, 2016 order as addressing only PCRA I and Petitioner's related motions seeking DNA testing.  Petitioner's post-conviction appeal brief focused almost exclusively on whether he satisfied statutory requirements for seeking DNA testing under the Postconviction DNA Act.  Dkt. 12-9.  Likewise, the OCCA's July 12, 2016 order expressly remanded the case to the state district court for a "proper" order addressing Petitioner's request for DNA testing under the Postconviction DNA Act.  Dkt. 12-10, at 1-2.  On this record it is understandable that Petitioner could have initially believed that the state courts never "adjudicated" the claim he asserted in PCRA II.  Nevertheless, as discussed below, it is sufficiently clear from the record that the state district court denied relief on PCRA II on August 10, 2016, and that Petitioner appeared to recognize the same as early as August 19, 2016, and at the very latest, by June 10, 2017.

testing—and thus failed to render a "decision on the merits" as to the PCRA II claims, that does not alter the fact that the state district court denied both petitions on August 10, 2016. Dkt. 12-11. Nor does it alter the fact that the OCCA affirmed the state district court's order denying relief on August 31, 2016, even in light of Petitioner's August 19, 2016 objections. Dkt. 12-13.[19]

For these reasons, the Court agrees with Respondent that Petitioner's one-year limitation period commenced on September 1, 2016, and expired September 1, 2017. Thus, absent any equitable reasons for tolling the one-year limitation period, the habeas petition filed July 30, 2018, is time-barred.

### 3. Petitioner has not demonstrated any basis for equitable tolling.

Equitable tolling of the AEDPA's one-year limitation period is available only if a habeas petitioner demonstrates (1) he diligently pursued his federal claims, and (2) "extraordinary circumstances beyond his control" (3) "caused" him to file an untimely federal habeas petition. *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000).

As just discussed, the Court agrees with Petitioner that the state district court's handling of PCRA II was less than ideal. *See supra* n.18. And the record demonstrates that Petitioner, at least initially, was reasonably diligent in pursuing the claims he raised in

---

[19] The OCCA noted in its August 31, 2016 order that Petitioner filed a response and objection, but the OCCA's order appears to focus entirely on Petitioner's request for DNA under the Postconviction DNA Act. Dkt. 12-13. It is not obvious from the order that the OCCA considered Petitioner's argument that the state district court's order improperly "lump[ed] together" his separate requests for post-conviction relief as asserted in PCRA I and PCRA II. *Id.* at 1-4. However, by acknowledging the objections and affirming the denial of relief, it appears the OCCA implicitly rejected Petitioner's argument.

PCRA II. Petitioner filed PCRA II on April 22, 2016, filed a "motion for disposition and favorable judgement" on June 27, 2016, advising the state district court that the State failed to file a proper response and seeking a ruling on PCRA II, and promptly filed an objection and response on August 19, 2016, urging the OCCA to find that the state district court overlooked PCRA II in its August 10, 2016 order by construing it as another request for DNA testing.

Nonetheless, after the OCCA issued its August 31, 2016 order affirming the state district court's August 10, 2016 order, Petitioner seemingly dropped the ball on PCRA II. Between September 29, 2016, and March 23, 2017, Petitioner filed five motions and one mandamus petition in state district court, and sought mandamus relief from the OCCA. Each of those requests for relief solely pertained to the denial of PCRA I and Petitioner's various motions for DNA testing under the Postconviction DNA Act. *See* Dkts. 12-17 through 12-21; http://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=MA-2016-728&cmid=119704, last visited August 4, 2019. Petitioner also sought federal habeas relief through the first § 2254 petition he filed in November 2016. But in that habeas petition he raised only the single claim that he was entitled to DNA testing. Dkt. 29, *Lolar v. Allbaugh*, N.D. Okla. Case No. 16-CV-692-GKF-JFJ, at 1. Petitioner's continued diligence in seeking relief on PCRA I, in both state district court and federal court, following his acknowledgment in his post-conviction appeal objections that the state district court apparently also denied his PCRA II claims, undermines Petitioner's ability to show that "extraordinary circumstances beyond his control" wholly prevented Petitioner from timely seeking federal habeas relief as to the claims he asserted in PCRA II. *See*

*Holland*, 560 U.S. at 649; *Marsh*, 223 F.3d at 1220.

Further, while Petitioner attempted to revive his efforts to obtain a ruling on PCRA II during his one-year limitation period, by filing a "motion to dismiss" in state district court on April 7, 2017, and "motion to clarify/correct the record" in OCCA Case No. MA-2017-449 on May 2, 2017, both efforts failedd. First, on June 21, 2017, the OCCA construed Petitioner's motion as an improper request for rehearing on his post-conviction appeal and dismissed the motion. Dkt. 12-26, at 1-2. Then, in the state district court's July 10, 2017 order, the court reiterated its position that it had denied both PCRA I and PCRA II either on May 5, 2016, or August 10, 2016, and that Petitioner had lost his post-conviction appeal from the denial of both PCRA I and PCRA II. Dkt. 12-23, at 1-2. Under these facts, Petitioner had sufficient notice, within a few days after July 10, 2017, that he would not obtain any further state court ruling on PCRA II and that, in the state district court's view, Petitioner had fully exhausted any appeal from the denial of PCRA II. Admittedly, Petitioner could have been confused when Respondent filed a response to Petitioner's first federal habeas petition, on July 19, 2017, stating that PCRA II appeared to be pending in state district court and Petitioner's claims thus appeared to be unexhausted. *See* Dkt. 21, *Lolar v. Allbaugh*, N.D. Okla. Case No. 16-CV-692-GKF-JFJ, at 17 n.11, 18 n.13. Yet, even after Respondent suggested Petitioner's PCRA II claims were pending and unexhausted, Petitioner took no further action in state district court as to his PCRA II claims

for six months.[20]

Finally, Petitioner's attempts to obtain a ruling on PCRA II in 2018, after his one-year limitation period expired, came too late and appear to be disingenuous. Between January 16, 2018, and March 12, 2018, Petitioner filed five motions in state district court seeking either to supplement or amend PCRA II or to obtain a ruling on PCRA II. Dkt. 12-27, at 28-29. And he twice sought mandamus relief from the OCCA—first, on March 12, 2018, in Case No. MA-2018-257, then, on April 18, 2018, in Case No. MA-2018-392—asking the OCCA to direct the state district court to "answer" PCRA II, alleging that application for post-conviction relief was still pending, and documenting his previous attempts to obtain a ruling on PCRA II. Dkt. 12-14, at 2-5. In support of his allegation that PCRA II was still pending, Petitioner cited Respondent's response to his first federal habeas petition. Dkt. 12-14, at 1-2. Critically though, he did not mention his own assertion from his reply brief that the state district court had "ruled upon" PCRA II by denying relief on August 10, 2016. *Id.; see also supra* n.20. The OCCA directed the state district court to respond to Petitioner's allegations. Dkt. 12-15, at 1. And, on June 4, 2018, the state district court emphatically advised the OCCA that no motions, petitions or applications were pending in state district court as of July 10, 2017, that Petitioner's attempts to seek

---

[20] Ironically, in response to the Respondent's assertions, Petitioner filed a reply brief on July 28, 2017, asserting that the state district court had, in fact, "ruled upon" PCRA II in its August 10, 2016 order and reasserting his argument that the state court improperly "lumped together" both applications for post-conviction relief. Dkt. 23, *Lolar v. Allbaugh*, N.D. Okla. Case No. 16-CV-692-GKF-JFJ, at 1-2. To the extent Petitioner now asserts that the state district court never ruled upon PCRA II, his current position is inconsistent with his previous position.

relief between January 2018 and March 2018 were a "nullity," and that, in the state district court's view, Petitioner fully exhausted all of his post-conviction claims through his post-conviction appeal. *Id.* at 1-2. The OCCA, apparently satisfied with the state district court's response, dismissed Petitioner's fourth mandamus action on June 15, 2018. Dkt. 12-24, at 2. While Petitioner filed the instant habeas petition within a reasonable time after the OCCA denied his fourth mandamus action, Petitioner's 2018 attempts to revive his PCRA II claims in state court, following six months of inactivity, does not support equitable tolling. This is particularly true given that Petitioner made his first arguments regarding the state district court's failure to rule on PCRA II in his objection and response filed August 19, 2016, and had notice as of July 10, 2017, that the state district court viewed Petitioner's PCRA II claims as disposed of and fully exhausted.

Based on the foregoing, the Court finds the circumstances of this case are not sufficiently "unusual" to warrant equitable tolling. *Al-Yousif*, 779 F.3d at 1179.

### 4. Petitioner fails to present a credible claim of actual innocence.

Finally, to the extent Petitioner seeks to avoid the time bar through his assertion of actual innocence, the Court finds the equitable exception recognized in *Perkins* does not apply. In *Perkins*, the Supreme Court cautioned that the actual-innocence "gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" 569 U.S. at 401 (quoting *Schlup*, 513 U.S. at 316). And, as previously stated, the petitioner must (1) support his claim of constitutional error with "new reliable evidence—whether it be exculpatory scientific

evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial" and (2) demonstrate that "in light of this new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 324, 329.

Here, Petitioner alleges "exculpatory" DNA and fingerprint evidence, if tested would prove his innocence. Dkt. 1, at 5, 7-8; Dkt. 15, at 8-9. But, for two reasons, the Court finds Petitioner's assertion of actual innocence is not credible. First, it rests on speculation that the untested evidence would be exculpatory. *See, e.g.*, *Cardwell v. Allbaugh*, No. 18-CV-199-CVE-FHM, 2018 WL 6075480, at *7 (N.D. Okla. 2018) (unpublished)[21] (noting that "Schlup requires reliable, exculpatory scientific evidence, not speculation about untested scientific evidence" and stating that "petitioner's blanket assertion that DNA testing would exonerate him of his crimes does not support a credible claim of actual innocence" (quoting *Chavez v. Trani*, 534 F. App'x 799, 801 (10th Cir. 2013))). Second, and more fatal to his actual-innocence claim, the trial transcript amply supports the state district court's findings that the fingerprint and DNA evidence for which Petitioner has persistently sought testing simply does not exist. Law enforcement officers who investigated the crime scene testified that the window of the victim's house was not dusted for fingerprints and that no fingerprints were recovered from the knife used to stab the victim. *See* Dkt. 22-1 (Trial Transcript), *Lolar v. Allbaugh*, N.D. Okla. Case No. 16-CV-692-GKF-JFJ, at 176-77, 180.

---

[21] The Court cites this unpublished decision for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

Moreover, the blood samples that were analyzed by the Oklahoma State Bureau of Investigation, namely, samples of blood found in the car driven by Petitioner on the night of the home invasion, tested positive for McGuire's DNA. *Id.* at 200-05, 220-28. And the jury heard, and by its verdict found credible, Latisha Wiggins' testimony that Petitioner had blood on his hands on the night of the home invasion and that Petitioner confessed to Wiggins that he robbed McGuire and nearly killed him because McGuire returned home while Petitioner was searching McGuire's home for marijuana. *Id.* at 128-152.

On the record presented, the Court is not persuaded that the actual-innocence gateway should open to permit review of Petitioner's untimely habeas claims.

## III.    Conclusion

In sum, the Court concludes that the petition for writ of habeas corpus, filed July 30, 2018, is untimely and that Petitioner has not demonstrated any circumstances to either excuse or overcome the untimeliness of the petition. The Court therefore grants Respondent's motion to dismiss and dismisses the habeas petition, with prejudice, as time-barred.

## IV.    Certificate of appealability

This Court must "issue or deny a certificate of appealability when it enters a final order adverse to the [habeas] applicant." Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*. The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When, as here, the Court dismisses a habeas petition on procedural grounds, the applicant must make this showing by demonstrating both "[1] that jurists of

reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on this Court's review of the state court record, including the trial transcript and exhibits and post-conviction proceedings, the Court finds that Petitioner cannot make either showing. The Court therefore denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note on the record the substitution of Scott Crow in place of Joe M. Allbaugh as party respondent.

2. Petitioner's motion to withdraw his motion for summary judgment (Dkt. 21) is **granted**.

3. Petitioner's motion for summary judgment (Dkt. 16) and Respondent's response in opposition to the motion for summary judgment (Dkt. 17) are **stricken from the record**.

4. Respondent's motion to dismiss the petition for writ of habeas corpus (Dkt. 11) is **granted**.

5. The petition for writ of habeas corpus (Dkt. 1) is **dismissed with prejudice** as time-barred.

6. A certificate of appealability is **denied**.

7. A separate judgment shall be issued herewith.

**DATED** this 15th day of August 2019.

TERENCE C. KERN
United States District Judge